53670. MALOY v. PLANTER'S WAREHOUSE & LUMBER COMPANY, INC.
53671. PLANTER'S WAREHOUSE & LUMBER COMPANY, INC. v. PARKER et al.

WEBB, Judge.

On June 4, 1973, Charles Maloy entered into a contract with Charles D. Parker for the construction of a dwelling for Maloy in Henry County. Planter's Warehouse & Lumber Company, Inc. sold materials to Parker and Maloy for use in the construction, in an amount alleged to be $31,059.43. Although Maloy paid a total of $80,053.16 to Parker, nothing was ever paid to Planter's. On August 12, 1974, Planter's filed of record a lien against Maloy's property claiming $31,059.43, and thereafter brought suit against Maloy and Parker for personal judgments against them and a special lien in rem against the property of Maloy. The defendants filed answers and cross actions.

Testimony revealed that Maloy had obtained from Fulton Federal Savings & Loan Association a construction loan, to secure which he gave a deed to secure debt to the property. Although it appears that Fulton Federal was provided with a copy of the architect's plans and specifications and a copy of the contract, that it

regularly sent inspectors to the construction site, and that it made periodic disbursements, there was no evidence that Fulton Federal adopted the contract as its own.

Evidence was submitted as to the manner in which Planter's charged the items of materials, that Maloy selected some materials personally, that Parker made purchases for the construction, that some of the purchases were for tools which were never a part of the house, that some of the items represented by Parker to be for the Maloy house were used by Parker for the benefit of another party, and that some materials specially ordered for Maloy were returned to Planter's who had offered to try to dispose of them to help reduce the indebtedness.

At the close of the evidence Maloy moved for a directed verdict, which was denied.

On January 20, 1975, the jury returned a verdict for Planter's for $22,561.92 against Parker, the contractor, and a special lien for $8,549.02 against the property of Maloy. The circumstances relating to the judgment, its rendition and entry of record, are hereinafter set out. Planter's moved for a new trial, and judgment notwithstanding the verdict; Maloy also moved for a judgment notwithstanding the verdict; Parker made no motions and no appeal. Planter's motion for a new trial was granted; all other motions were denied. Both Planter's and Maloy have appealed.

1. Maloy asserts as error the trial court's denial of his motion for directed verdict in his favor based on two contentions: (a) there could be no materialmen's lien against the equitable interest of Maloy unless Fulton Federal Savings and Loan Association as the holder of the legal title to the property, under a deed to secure debt from Maloy, was made a party to the action; and (b) the materialman Planter's Warehouse and Lumber Co. (i) failed to show that materials supplied were actually used on Maloy's house and (ii) failed to keep separate accounts as to materials furnished.

(a) The words "true owner," as used in Code Ann. § 67-2001 (2) providing for liens of materialmen for materials furnished for the improvement of realty are sufficiently comprehensive to embrace the owner of an equitable title to the real estate, and the liens therein

provided for may attach to his interest. If the defendant " 'has any interest in the premises upon which the lien can take effect, that interest is bound.' " *Wilson Manufacturing Co. v. Chamberlin-Johnson-DuBose Co.,* 140 Ga. 593 (1) (3) (79 SE 465) (1913); *Bennett Iron Works v. Underground Atlanta,* 130 Ga. App. 653 (1) (204 SE2d 331) (1974). We find no evidence to indicate that the savings and loan association adopted or agreed to the contract between Maloy and Parker, or that it had anything to do with any arrangement under which the materialman furnished materials, as in *Williams v. Chatham Real Estate &c. Co.,* 13 Ga. App. 42 (78 SE 869) (1913) upon which Maloy relies. Fulton Federal was not a necessary party.

(b) (i) A materialman is not required to show that the materials for which he claims a lien were actually used on the job of the owner against whose interest he is asserting his lien. "It is the general rule that there is a presumption of the use of materials in a building or improvement arising from the fact of their delivery thereto for that purpose, and the burden is then on the property owner to prove that the material was not so used. [Cits.] The reason for this rule is that it would be too great a burden on the materialman to require him to prove by direct and positive testimony that the materials delivered were actually used in the improvement . . ." *Bankston v. Smith,* 236 Ga. 92 (222 SE2d 375) (1976). Here the materials were delivered to Maloy's contractor who made the purchases for his job, and in many instances Maloy himself had made the selections. Where a materialman furnishes and delivers to the owner's contractor or agent materials in reliance upon the owner's representation that the materials are intended for the improvement of his property, the owner is estopped, as between himself and the materialman, to contend that it was not in fact so used. *Jackson's Mill &c. Co. v. Holliday,* 108 Ga. App. 663 (4) (134 SE2d 563) (1963); *Bowen v. Collins,* 135 Ga. App. 221 (4) (217 SE2d 193) (1975).

(ii) Maloy asserts that he should have been granted a directed verdict because Planters failed to keep separate accounts of materials furnished and picked up by his contractor. He said his contractor was doing another job in

Florida, and had obtained some materials from Planters for that construction. Maloy relies upon *Building Material &c. Co. v. North,* 116 Ga. App. 348 (157 SE2d 497) (1967); *Grigsby v. Fleming,* 96 Ga. App. 664 (101 SE2d 217) (1957); and *Williams v. Willingham-Tift Lumber Co.,* 5 Ga. App. 533 (63 SE 584) (1909). In each the materialman had furnished material to a contractor who was doing several jobs at the same time, and had failed to determine to which job the material should be charged or to which job payments should be credited. Here, contrary to Maloy's assertions, the purchase tickets specified the Parker-Maloy job, and there were no payments. The cases relied upon by Maloy are not supportive of his contention. "[I]t is erroneous for the court to direct a verdict in favor of a particular party or parties to the cause unless there is no issue of fact, or unless the proved facts, viewed from every possible legal point, would sustain no other finding than the one so directed." *Horn v. Preston,* 217 Ga. 165, 167 (1) (121 SE2d 775) (1961).

The trial court did not err in denying Maloy's motion for a directed verdict.

2. Nor did the trial court err in denying Maloy's motion for judgment notwithstanding the verdict. A motion for judgment notwithstanding the verdict under Code Ann. § 110-113 provides "for a final disposition of the case by the appellate court where the evidence is insufficient to justify the verdict rendered on any theory, or where a judgment for the losing party in the trial court is demanded by the law." *Kicklighter v. Kicklighter,* 217 Ga. 54, 57 (1) (121 SE2d 122) (1961). "A motion for a judgment notwithstanding the verdict may be granted only when a valid motion for a directed verdict has been made by the movant and erroneously denied. . . A motion for a directed verdict is in order only where there is no conflict in the evidence and a verdict in the movant's favor is demanded. Code § 110-104." *Daniel v. Weeks,* 217 Ga. 388, 396 (1) (122 SE2d 564) (1961).

In considering a motion for judgment notwithstanding the verdict we are concerned substantially with those same principles applicable to a consideration of a motion for directed verdict. If there be any evidence to support the verdict, denial of the motion is

proper. *Moody v. Nides Finance Co.,* 115 Ga. App. 859 (1) (156 SE2d 310) (1967). The evidence, although as to some facets of the case in conflict, amply authorized the verdict in Planter's favor, and having held that there was no error in denying Maloy's motion for a directed verdict, we find no error in the refusal to grant the motion for judgment notwithstanding the verdict.

3. Maloy next enumerates as error the trial court's grant of Planter's motion for new trial, and the trial court's entry of March 5, 1976 correcting errors.

Appellate courts will not disturb a ruling by the trial judge acting in his discretion on the first grant of new trial solely on general grounds in the absence of a showing that the trial judge thereby abused his discretion. Code Ann. § 6-1608; *Hunt v. Denby,* 128 Ga. App. 523 (4) (197 SE2d 489) (1973). Our appellate courts will not interfere with the first grant of a new trial when there is any evidence at all upon which a different verdict could be sustained. *Graham v. Eastman,* 75 Ga. 889 (1885).

Maloy contends, however, that Planter's motion for a new trial was a nullity, void on the face of the record, and that the trial court was without jurisdiction to rule on it.

On January 20, 1975, a jury returned its verdict, and at the direction of the court Planter's counsel prepared a judgment pursuant thereto and tendered it to the court on that same date for the court's signature and entry. Through oversight or omission the court failed to sign and enter the judgment on that date, as it had promised to do. Attorneys for both Planter's and Maloy, relying on the court's announcement that the judgment would be entered on January 20, each then filed motions—Planter's for a new trial and a judgment notwithstanding the verdict on February 12, and Maloy for a judgment notwithstanding the verdict on February 28. On April 3 counsel for both, upon learning that the judgment had not been filed, brought the matter to the court's attention. The court thereupon announced that he would on that date enter a judgment as of January 20 as originally intended. The trial court, however, through oversight and omission made a clerical mistake by dating the order April 3, rather than January 20, 1975, thus compounding the original erroneous failure and omission. On March 5, 1976, the

trial judge, having realized the second mistake, made and filed the order correcting the erroneous previous action. That order, which Maloy said the court erred in making, was as follows:

"The jury returned its verdict in the foregoing matter on January 20, 1975, and at the directions of the Court the plaintiff's attorney promptly prepared a judgment in this matter and tendered it to the Court on January 20, 1975, for the Court's signature and entry. Through oversight and omission on the part of the Court, the order was not signed and entered on January 20, 1975, as had been previously announced. The attorneys for the plaintiff and the defendants acted in accordance with the directions of the Court that the order would be entered on January 20, 1975, and filed certain motions that are of record. The matter of signing the entry of the order was brought to the Court's attention on April 3, 1975, by the attorneys for the plaintiff and defendants. The Court again through oversight and omission dated the order April 3, 1975, when it was the intention of the Court to date the order and have it entered as of the date of January 20, 1975.

"The Court does hereby correct its error by amending said order by striking the date of April 3, 1975, and substituting in lieu thereof the date of January 20, 1975, and have said order entered as of January 20, 1975. This order is entered for the purpose of correcting the Court's error in order that said order will conform to law, justice, the understandings of the parties, and speak the true intentions of the Court so that no party will be prejudiced by the Court's error. All motions filed in reliance of the directions of the Court are hereby declared to be timely filed."

Our Code provides: "Every court has power—To amend and control its processes and orders, so as to make them conformable to law and justice; and to amend its own records, so as to make them conform to the truth." Code Ann. § 24-104 (6). "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Code Ann. § 81A-160 (g). We have held the language "amend its own

records" includes " 'amending' the record by reducing to writing an order which had previously existed only as an oral statement and was therefore not properly a part of the record at all, although it had been recognized as such during the trial of the case." *Israel v. Joe Redwine Ins. Agency,* 120 Ga. App. 14, 16 (169 SE2d 347) (1969).

"[E]ven though a judgment . . . may not be entered on a verdict at the proper time, every court has the inherent power—and it is the court's duty—to correct its own records to make them speak the truth. *Seay v. Treadwell,* 43 Ga. 564; *Whittle v. Jones,* 198 Ga. 538 (32 SE2d 94). Where based solely on the record, and without the necessity for the introduction of extrinsic evidence, the court may, on its own motion and without notice, enter such judgment and decree nunc pro tunc at a later date; and since such entry simply perfects the record, as between the parties it relates back to the time when it should have been entered . . . Code §§ 24-104 (6), 81-1201 [now repealed]." *Swindell v. Swindell,* 208 Ga. 727 (1) (69 SE2d 197) (1952); *Kerr v. Noble,* 124 Ga. App. 722, 723 (1) (185 SE2d 807) (1971).

"Under the Civil Practice Act all judgments are signed by the judge, and filed with the clerk. No time limit is given for such signing and filing. Code Ann. § 81A-158 (Ga. L. 1966, pp. 609, 662). The present record contains no facts which would prevent the entry of a judgment on the verdict of the jury at a subsequent term." *Hiscock v. Hiscock,* 227 Ga. 329, 331 (2) (180 SE2d 730) (1971).

In *Moore v. Moore,* 229 Ga. 600, 601 (193 SE2d 608) (1972) the Supreme Court held that the trial court had authority to enter a divorce decree nunc pro tunc where the jury had previously returned a verdict and the cause was ripe for judgment, even though one of the parties had died prior to the actual entry but subsequent to the verdict.

The order and entry filed March 5, 1976 was for the purpose of correcting errors and making the record speak the truth. This was within the court's inherent and statutory power. Compare *Arnold v. DeKalb County,* 141 Ga. App. 315 (1977) and cits. Since it relates back to the time when it should have been entered, and as it was so intended by the trial court, the motions filed in reliance

upon the directions of the trial court were preserved and timely filed.

4. On cross appeal, Planter's appeals only from that portion of the trial court's order denying its motion for judgment notwithstanding the verdict. We cannot say that Planter's motion for a directed verdict was erroneously denied. As stated hereinabove (Div. 2), a motion for directed verdict is in order only where there is no conflict in the evidence and a verdict in the movant's favor is demanded. Code § 110-104. A motion for a judgment notwithstanding the verdict may be granted only if the denial of the motion for directed verdict was erroneous. We find no error in the denial of Planter's motion for judgment notwithstanding the verdict.

*Judgment affirmed on both appeal and cross appeal. Deen, P. J., and Marshall, J., concur.*

ARGUED APRIL 6, 1977 — DECIDED APRIL 8, 1977; CASE NO. 53670 REHEARING DENIED APRIL 21, 1977 — ▮

▮

*L. C. Chrietzberg,* for Maloy.
*L. C. Chrietzberg, Alfred D. Fears,* for Parker et al.
*A. J. Welch, Jr., Rod G. Meadows, Alfred D. Fears,* for Planter's Warehouse & Lumber Company.